Michael Einbinder (ME-3930)
Linden E. Thomas (LT-9974)
EINBINDER & DUNN, LLP
104 West 40th Street
New York, NY 10018
(212) 391-9500
(212) 391-9025 - facsimile

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
DLJ MORTGAGE CAPITAL, INC.,                       **Case No. 07 CV 3746**
                                                                       **(LAP)(HP)**
        Plaintiff,

   -against-

CAMERON FINANCIAL GROUP, INC
-------------------------------------------------------------------x

**MEMORANDUM OF LAW OF DEFENDANT CAMERON FINANCIAL GROUP INC., IN SUPPORT OF THE MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR LACK OF JURISDICTION AND IMPROPER VENUE OR IN <u>THE ALTERNATIVE TO CHANGE VENUE</u>**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES……………………………………………………………....i

INTRODUCTION…………………………………………………………………….....1

ARGUMENT……………………………………………………………………………...3

      POINT I:    THIS COURT LACKS PERSONAL JURISDICTION OVER CAMERON…………………………………………………….3

           A.    LEGAL STANDARD…………………………………......3

           B.    THE COURT DOES NOT HAVE PERSONAL JURISDICTION OVER CAMERON............................…..4

                1. CAMERON IS NOT DOING BUSINESS IN NEW YORK ……………………………………………………4

                2. CAMERON DID NOT TRANSACT BUSINESS IN NEW YORK OR CONTRACT TO SUPPLY GOODS OR SERVICES IN NEW YORK……………………………..5

                3. CAMERON DID NOT CONSENT TO THE EXERCISE OF PERSONAL JURISDICTION BY THE NEW YORK COURTS…………………………………………………….7

      POINT II:    VENUE IN NEW YORK IS IMPROPER………………………..8

      POINT III:    CALIFORNIA IS THE MORE CONVENIENT FORUM……...10

CONCLUSION……………………………………………………………………………..13

**TABLE OF AUTHORITIES**

**Federal Cases:**

Chet Baker Enterprises, L.L.C. v. Fantasy, Inc., 257 F.Supp.2d 592 (S.D.N.Y. 2002)…11

Flexible Technologies, Inc. v. World Tubing Corp., 910 F.Supp. 109 (E.D.N.Y. 1996)..11

International Customs Associates, Inc. v. Ford Motor Company, 893 F.Supp. 1251
    (S.D.N.Y. 1995)……………………………………………........................................12

Kahn Lucas Lancaster, Inc. v. Lark International, Ltd., 956 F.Supp. 1131
    (S.D.N.Y. 1997)……………………………………………………………...3, 4, 6, 7

PI, Inc. v. Quality Products, Inc., 907 F.Supp. 752 (S.D.N.Y. 1995)……………………..9

Traver v. Officine Meccaniche Toshci SPA, 233 F.Supp.2d 404
    (N.D.N.Y. 2002)…………………………………………………………………..6, 7

**State Cases:**

Emerson Radio & Phonograph Corporation v. Eskind, 32 Misc.2d 1038, 228 N.Y.S.2d
    841 (1957)………………………………………………………………………………4

**Federal Statutes:**

Fed.R.Civ.Proc.Rule 12(b)(2)……………………………………………………………..3

Fed.R.Civ.Proc.Rule 12(b)(3)……………………………………………………....…8

28 U.S.C. § 1391……………………………………………………………………………10

28 U.S.C. § 1391(a)………………………………………………………………….....9

28 U.S.C. § 1391(a)(2)…………………………………………………………………...9, 10

28 U.S.C. § 1391(a)(3)…………………………………………………………………….10

28 U.S.C. 1404(a)……………………………………………………………….………10

**State Statutes:**

CPLR § 301……………………………………………………………………………..4,5

CPLR § 302……………………………………………………………………………….8

CPLR § 302(a)…………………………………………………………………………….5

CPLR § 310……………………………………………………………………………….8

## **INTRODUCTION**

Counsel for defendant Cameron Financial Group ("Cameron") respectfully submits this memorandum of law in support of its motion to dismiss for lack of jurisdiction and for improper venue. If this court does not dismiss this action, this case should be transferred to the United States District Court for the Central District of California.

The background of this action as it relates to the instant motion is set forth in the certification of Carey Fierro, dated June 29, 2007 (the "Fierro Cert."). This action appears to be based on an agreement entitled Seller's Purchase, Warranties and Interim Servicing Agreement dated June 1, 2001 and the amendment to that agreement dated April 1, 2005 (the "Interim Agreements") (Fierro Cert., Ex. A)[1]. Pursuant to those agreements, Cameron sold loans to DLJ Mortgage Capital, Inc., ("DLJ"). In its complaint, DLJ contends that Cameron breached a purported obligation to repurchase loans. (Fierro Cert., Ex. B)

DLJ also contends in its complaint, among other things, that the court has personal jurisdiction over Cameron, an out-of-state defendant. However, Cameron does not maintain offices in New York, Cameron does not transact business in New York, Cameron has no presence in New York, Cameron did not consent to jurisdiction in the state of New York in the Interim Agreements, or in any other agreements, and none of the events giving rise to this litigation occurred in New York. Accordingly, this court does not have personal jurisdiction over Cameron.

---

[1] Cameron is currently unable to locate the agreement between the parties dated June 1, 2001. However, upon information and belief the agreements dated June 1, 2001 and the amended agreement dated April 1,2005 are identical with respect to the provisions relevant to this motion.

1

Cameron, which is organized in California, conducts its business out of its offices in San Luis Obispo, California or its satellite office in Laguna Hills, California and all of its employees are located in those offices. (Fierro Cert. ¶6.) Cameron does not maintain any office or have any employees in New York State and employees of Cameron have not traveled to New York to negotiate the terms of the Interim Agreements or any other agreements between the parties. (Fierro Cert. ¶ 6 and 7.) Additionally, Cameron does not maintain any bank accounts or have any telephone listings in New York. Furthermore Cameron, does not, and did not conduct any public relations work in New York and has not applied for any mortgage lenders or like license in New York. (Fierro Cert. ¶ 6.)

Also, the Interim Agreements do not provide for the sale of goods and services in New York. (Fierro Cert. ¶9.) No services or goods were sold or supplied by Cameron to DLJ under any agreements between them and certainly none were provided in New York. (Fierro Cert. ¶9.) The Interim Agreements provided for the sale of certain mortgage loans with the servicing rights thereto. Each mortgage loan sold to DLJ pursuant to the Interim Agreements originated wholly outside of New York and each was secured by a lien on residential real property located outside of New York. (Fierro Cert. ¶ 10.)

DLJ also contends in its complaint, among other things, that venue is proper based on 28 U.S.C. §1391(a). Venue is not proper in New York. Cameron does not maintain offices in New York; the events giving rise to the claim did not occur in New York and as demonstrated below, Cameron is not subject to personal jurisdiction in New York. Assuming, *arguendo,* that this court determines that it has jurisdiction over Cameron and that venue is proper, this case should be transferred to the District Court for the Central District of California because many of the witnesses (party and non-party) to

the events and documents relating to the Interim Agreements are all located outside of New York. (Fierro Cert. ¶¶ 11, 12 and 13.) For example, Cameron will likely require testimony from Gary Shev, an employee of a consultant to Cameron, who is a resident of California. He is the person most familiar with Cameron's transactions with DLJ and would testify about the disputed transactions. (Fierro Cert. ¶ 13.)

Moreover, documents and witnesses relating to the defenses asserted by Cameron are located outside New York. (Fierro Cert. ¶¶ 11, 12 and 13.) For instance, to the extent that DLJ has sold, foreclosed or otherwise liquidated the subject loans, it should have been able to satisfy the asserted obligations purportedly owed to it. Most, if not all, of the properties which are the subject of the mortgage loans that were sold to DLJ, currently have values in excess of the values appraised at the time the mortgages were given. (Fierro Cert. ¶ 13.) However, if DLJ did not properly mitigate its damages, Cameron will require testimony from non-party witnesses located outside of New York. (Fierro Cert. ¶ 13 .) For example, Cameron will likely require the testimony of employees from various loan servicing companies that handled DLJ's liquidation of the loans and none of those companies are located in New York. (Fierro Cert. ¶13.) In addition, Cameron will require the testimony of non-parties involved in the valuation of the properties and none of those individuals are located in New York since none of the properties are in New York. (Fierro Cert. ¶13.)

## ARGUMENT

### POINT I

### THIS COURT LACKS PERSONAL JURISDICTION OVER CAMERON

3

A. LEGAL STANDARD

Federal Rule of Civil Procedure Rule 12(b)(2) provides for dismissal of an action for lack of jurisdiction. Fed.R.Civ.Proc.Rule 12(b)(2). Personal jurisdiction over a defendant is determined by the law of the state where the court sits. Kahn Lucas Lancaster, Inc. v. Lark International, Ltd., 956 F.Supp.1131 (S.D.N.Y. 1997). In New York, jurisdiction can be exercised over a defendant under CPLR § 301 or the long-arm statute CPLR § 302. A party can contractually consent to the jurisdiction of the New York Courts. Emerson Radio & Phonograph Corporation v. Eskind, 32 Misc.2d 1038, 228 N.Y.S.2d 841 (1957).

B. THE COURT DOES NOT HAVE PERSONAL JURSIDICTION OVER CAMERON

DLJ contends that that the court has jurisdiction over Cameron based on 28 U.S.C. §1332, in that the parties reside in different states, and the amount in controversy allegedly exceeds $75,000. Section 1332 only provides the grounds for the court to assert subject matter jurisdiction. It does not provide a basis for the exercise of personal jurisdiction over the defendant. As indicated above personal jurisdiction over a defendant is determined by the laws of the state in which the court sits. *See* Kahn *supra*. In this case the laws of New York do not provide a basis for the exercise of personal jurisdiction over Cameron.

1. CAMERON IS NOT DOING BUSINESS IN NEW YORK

CPLR § 301 provides that "[a] court may exercise such jurisdiction over persons, property or status as might have been exercised heretofore." CPLR § 301. A foreign corporation is subject to general jurisdiction if it is "doing business" in New York, that is,

4

if it meets the stringent test of being engaged in such a continuous and systematic course of conduct as to warrant finding a presence in the jurisdiction. Hutton v. Priddy's Auction Galleries, Inc., 275 F.Supp.2d 428 (S.D.N.Y. 2003). The factors the court will consider in determining whether a foreign corporation is subject to jurisdiction under CPLR § 301 are (1) whether the company has an office in New York; (2) whether it has any bank accounts or other property in New York; (3) whether it has a phone listing in New York; (4) whether it does public relations work in New York; and (5) whether it employs individuals, permanently located in New York to promote its interests. Id. at 437.

Under the circumstances it is clear that the statutory requirement for jurisdiction over Cameron under C.P.L.R. § 301 has not been met. Cameron is a corporation organized under the laws of California with offices from which it conducts its business in San Luis Obispo County, California.  (Fierro Cert. ¶ 6)  Cameron does not have a bank account in New York.  (Fierro Cert. ¶ 6.)  Nor does Cameron have any telephone listing in New York, or do any public relations work in New York.  (Fierro Cert. ¶ 6)  Cameron has made no application to conduct any licensed business, such as mortgage or lending, in New York.  (Fierro Cert. ¶ 6.) Finally, Cameron does not employ anyone in New York to promote its business.  (Fierro Cert. ¶ 6.)  For the foregoing reasons, Cameron is not doing business in New York and this Court does not have personal jurisdiction over it pursuant to C.P.L.R. §301.

> 2. CAMERON DID NOT TRANSACT BUSINESS IN NEW YORK OR CONTRACT TO SUPPLY GOODS OR SERVICES IN NEW YORK

The New York long-arm statute provides:

> As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary…who in person or through an agent…transacts any business

5

>within the state or contracts anywhere to supply goods or services in the state.

CPLR § 302(a). Factors in determining whether a party transacted business includes: (1) whether the defendant has an on-going contractual relationship with a New York business; (2) whether the contract was negotiated or executed in New York; (3) whether the defendant has visited New York for the purpose of meeting with the parties to the contract regarding performance thereof after the execution of the contract; and (4) whether the contract requires notices and payments to be sent into the forum state or otherwise perform in New York. Traver v. Officine Meccaniche Toshci SPA, 233 F.Supp.2d 404 (N.D.N.Y. 2002). Following the factors in Traver, the circumstances favor dismissal of this action because Cameron did not transact business in New York or contract to supply goods or services to New York.

There was no ongoing contractual relationship between DLJ and Cameron. (Fierro Cert. ¶ 8.) The mortgage loans that Cameron believes are the subject of the Interim Agreement were conveyed pursuant to the Interim Agreement (Fierro Cert. ¶ 8.) Servicing rights were conveyed by Cameron at the time the loans were sold to DLJ or shortly thereafter. (Fierro Cert. ¶ 8.) The Interim Agreements were essentially buy/sell agreements for those mortgage loans. Once each loan was sold and the servicing rights conveyed there was no further relationship between the parties in connection with that loan. (Fierro Cert. ¶8.) Thus, the parties did not have an ongoing contractual relationship.

The Interim Agreements were not negotiated in New York, nor did anyone on behalf of Cameron travel to New York relating to the negotiations of the Interim Agreements. (Fierro Cert. ¶ 7.) Further, where, as here, negotiation of the terms of the

6

Interim Agreements were conducted through telephone calls and by email, there is no transaction of business for jurisdictional purposes. Traver v. Officine Meccaniche Toshci SPA, 233 F.Supp.2d 404 (N.D.N.Y. 2002); Kahn Lucas Lancaster, Inc. v. Lark International, Ltd., 956 F.Supp. 1131 (S.D.N.Y. 1997). Where, as here, no significant meetings essential to an ongoing relationship of the parties occurred in New York, there is no jurisdiction in New York. Kahn Lucas Lancaster, Inc. v. Lark International, Ltd., 956 F.Supp. 1131 (S.D.N.Y. 1997).

Nor did the Interim Agreements, by its terms, direct the supply of goods or services to New York. Cameron performed under the Interim Agreements by, among other things, maintaining books and records and receiving notifications at, and delivering documents from its offices in San Luis Obispo County, California. (Fierro Cert. ¶11.) The Interim Agreements provide for notices to be sent to Cameron at its offices in San Luis Obispo, California. (Fierro Cert. ¶11; Ex. A.) For these reasons, there is no personal jurisdiction over Cameron under the factors in Traver.

The New York long-arm statute also allows courts to exercise jurisdiction where the defendant has contracted to supply goods or services in New York. The mortgage loans that were the subject of the Interim Agreements were loans made by parties in states other than New York and were secured by liens on residential real property outside of New York. Servicing of the mortgage loans that were the subject of the Interim Agreement was conducted by third parties. The Interim Agreements do not require Cameron to provide any services to DLJ in New York. Thus, there is no jurisdiction on this basis.

For the foregoing reasons, there is no jurisdiction over Cameron in New York and this case should be dismissed.

3.     CAMERON DID NOT CONSENT TO THE EXERCISE OF PERSONAL JURISDICTION BY THE NEW YORK COURTS

In light of the fact that neither CPLR §310 or §302 provide the basis for the exercise of personal jurisdiction, the only remaining grounds upon which personal jurisdiction could be asserted would be Cameron's consent to jurisdiction in New York. Cameron did not consent to jurisdiction in New York for claims arising out of the Interim Agreements (Fierro Cert. ¶ 7; Ex. A.)  Indeed, there is no such consent contained in the Interim Agreements.  Furthermore, there is no dispute that DLJ drafted the Interim Agreements and sent it to Cameron for execution.  (Fierro Cert. ¶7.)  Although DLJ chose to include a choice-of-law provision favoring New York, DLJ failed to include any jurisdictional clause and the Interim Agreements do not state that the New York courts have jurisdiction or that the case will be tried in the New York courts.  Thus, the court cannot exercise personal jurisdiction over Cameron on the basis of any consent to such jurisdiction by Cameron.

## POINT II

## VENUE IN NEW YORK IS IMPROPER

Federal Rule of Civil Procedure Rule 12(b)(3) provides for dismissal of an action for improper venue. Fed.R.Civ.Proc.Rule 12(b)(3). Federal statutory law provides:

> A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same state, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial

8

>district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(a). Venue is not proper in New York under subsection (a)(1) because Cameron, the only defendant in this action, maintains offices in California (Fierro Cert. ¶ 6.)

This action is likewise improperly in New York under 28 U.S.C. § 1391(a)(2). None of the alleged events or omissions giving rise to the action occurred in New York. PI, Inc. v. Quality Products, Inc., 907 F.Supp. 752 (S.D.N.Y. 1995). The factors a court considers in determining the propriety of venue in New York under PI, Inc. includes the following: (1) where the agreement was negotiated or executed; (2) where the Agreement was to be performed; and (3) where the alleged breach of the agreement occurred. Id. at 759. Applying each of these factors to this action, it is clear that a substantial part of the alleged events or omissions giving rise to this action did not occur in New York and venue in New York is improper.

The Interim Agreements were not negotiated in New York (Fierro Cert. ¶7.); negotiations for the Interim Agreements occurred by telephone, email and mail. (Fierro Cert. ¶7.) The Interim Agreements were not executed by Cameron in New York (Fierro Cert. ¶7); Carey Fierro signed the Interim Agreements on behalf of Cameron in California. (Fierro Cert. ¶7.) Performance under the Interim Agreements required Cameron to, among other things, maintain books and records, participate in closings by phone, deliver documents and receive notifications all at or from its San Luis Obispo, California offices. (Fierro Cert. ¶ 11.) Moreover, DLJ alleges in the complaint that Cameron breached the Interim Agreements by failing to repurchase certain mortgage

9

loans sold to DLJ under the Interim Agreements. Assuming DLJ can prove these allegations, such a breach would not have occurred in New York. Therefore, this action is not properly in New York under 28 U.S.C. § 1391(a)(2).

Finally, there is no venue under 28 U.S.C. § 1391(a)(3). Pursuant to this section, venue is proper in any district where the defendant is subject to personal jurisdiction if there is no district in which the action may otherwise be brought. 28 U.S.C. §1391(a)(3). For the reasons set forth herein, this court does not have jurisdiction over Cameron. Further, since this action could have been brought in the Central District of California, venue in New York is not proper.

For the foregoing reasons, venue is improper under 28 U.S.C. § 1391 and this case should be dismissed.

## POINT III

## CALIFORNIA IS THE MORE CONVENIENT FORUM

As shown above, this court does not have jurisdiction and venue is improper. Accordingly, this action should be dismissed. In the alternative, it is respectfully submitted that this Court should exercise its discretion to change venue pursuant to 28 U.S.C. 1404(a), which provides as follows:

> For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

28 U.S.C. § 1404(a). The Court will consider the following factors in deciding whether to permit a change of venue: (1) place where the operative facts occurred; (2) convenience to the parties; (3) convenience to witnesses; (4) relative ease of access to sources of proof; (5) availability of process to compel the attendance of unwilling witnesses; (6)

plaintiff's choice of forum; (7) forum's familiarity with governing law; and (8) trial efficiency and interests of justice. Chet Baker Enterprises, L.L.C. v. Fantasy, Inc., 257 F.Supp.2d 592 (S.D.N.Y. 2002); Flexible Technologies, Inc. v. World Tubing Corp., 910 F.Supp. 109 (E.D.N.Y. 1996).

  The weight of the factors favor a transfer of this action to California. Most of the alleged events or omissions giving rise to the action occurred in the offices of Cameron in San Luis Obsipo, California. Cameron and all its current and former employees are located in California. (Fierro Cert. ¶ 6.) Moreover, none of the witnesses are from New York. (Fierro Cert. ¶¶ 12 and 13.) One of Cameron's most important witnesses will be Gary Shev who works for All Point Financial, Inc., which is a consultant to Cameron. (Fierro Cert. ¶ 13.) Mr. Shev is the person most familiar with the disputed transactions and would testify about those transactions in addition to testifying about discussions relating to the Interim Agreements. (Fierro Cert. ¶13.)

  Furthermore, the properties which are the subject of the mortgages loans that Cameron believes are at issue in this case and which were sold to DLJ currently have values in excess of the values appraised at the time the mortgages were given. If, as Cameron believes, DLJ has sold, foreclosed or otherwise liquidated most of those loans, DLJ would have been able to satisfy the asserted obligations purportedly owed to it. (Fierro Cert. ¶ 13.) However, if it did not, DLJ may have failed to properly mitigate its damages. To support this defense, Cameron will most likely require testimony from non-party witnesses and none of those witnesses are located in New York as none of the subject mortgaged property is located in New York. (Fierro Cert. ¶ 13.) For example, Cameron will likely require the testimony of employees from various loan servicing

11

companies that handled DLJ's liquidation of the loans. (Fierro Cert.¶13.) None of those companies are located in New York. In addition, Cameron will require the testimony of non-parties involved in the valuation of the properties and none of those individuals are located in New York since none of the properties are in New York. (Fierro Cert. ¶ 13.)

Also, documents, including emails exchanged between the parties relating to the negotiation of the Interim Agreements, are located at the offices of Cameron in California. (Fierro Cert. ¶12.) Moreover, the choice-of-law clause in the Interim Agreement cannot confer jurisdiction where, as here, "almost every other aspect of the contract and all of the circumstances surrounding the contract demonstrate that there is no personal jurisdiction." International Customs Associates, Inc. v. Ford Motor Company, 893 F.Supp. 1251 (S.D.N.Y. 1995) at 1261.

Here, DLJ drafted the Interim Agreements and sent them to Cameron in California for execution. (Fierro Cert. ¶7.) Cameron performed under the Interim Agreements by, among other things, maintaining books and records, participating in a closing, delivering documents and receiving notifications at its San Luis Obispo County, California offices. (Fierro Cert. ¶¶ 7 and 11.) Although the Interim Agreements indicate that New York law applies, the Interim Agreements do not state that the New York courts have jurisdiction or that the case will be tried in the New York courts. Significantly, DLJ could have included a forum selection clause when it drafted the Interim Agreements but did not.

For these reasons, and because the Interim Agreements do not require this action be conducted in New York, this Court should transfer this case to the United States District Court for the Central District of California.

## CONCLUSION

For all of the reasons stated above, Cameron requests that the action be dismissed for lack of jurisdiction and/or improper venue or in the alternative, transferred to the United States District Court for the Central District of California.

Dated: New York, New York
       June 29, 2007

                           EINBINDER & DUNN, LLP

                           By: /s/ Michael Einbinder_____
                               Michael Einbinder (ME-3930)
                               Linden E. Thomas (LT-9974)
                               *Attorneys for Defendant*
                               Cameron Financial
                               104 West 40th Street
                               New York, New York 10018
                               (212) 391-9500