UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ x

DLJ MORTGAGE CAPITAL, INC.,     :

                        Plaintiff,     :

                               :

          -against-     :           07 Civ. 3746 (LAP)(HP)

                               :

CAMERON FINANCIAL GROUP, INC.,     :

                      Defendant.     :

                               :

------------------------------------------------------------ x

---

**PLAINTIFF DLJ MORTGAGE CAPITAL, INC.'S MEMORANDUM
OF LAW IN OPPOSITION TO DEFENDANT CAMERON FINANCIAL
GROUP, INC.'S MOTION TO DISMISS THE COMPLAINT
FOR LACK OF JURISDICTION AND IMPROPER VENUE
OR IN THE ALTERNATIVE FOR CHANGE OF VENUE**

---

**Duval & Stachenfeld LLP**
300 East 42nd Street, Third Floor
New York, New York 10017
(212) 883-1700

## TABLE OF CONTENTS

TABLE OF AUTHORITIES................................................................................................ii

PRELIMINARY STATEMENT ........................................................................................1

STATEMENT OF FACTS ................................................................................................3

ARGUMENT.....................................................................................................................6

    I.    THIS COURT HAS PERSONAL JURISDICTION OVER CAMERON
           BECAUSE CAMERON TRANSACTED BUSINESS IN NEW YORK
           PURSUANT TO THE PURCHASE AGREEMENTS .......................................6

        1.  Cameron Is Subject to Personal Jurisdiction Under New York's Long-Arm
             Statute Due To Its Contractual Relationship With DLJMC ...............................7

           a.  Cameron Has Transacted Business In New York ..........................................7

           b.  This Action Arises From Transactions With DLJMC in New York.............12

        2.  The Exercise of Jurisdiction Over Cameron Satisfies
             The Constitutional Requirement of Due Process  ..............................................12

    II.   VENUE IN THE SOUTHREN DISTRICT OF NEW YORK IS PROPER
           AS A SUBSTANTIAL PART OF THE RELEVANT EVENTS AND
           OMISSIONS OCCURRED IN NEW YORK ....................................................15

    III.  CAMERON'S REQUEST TO TRANSFER VENUE SHOULD BE
           DENIED AS IT CANNOT ESTABLISH THAT CALIFORNIA IS A
           MORE APPROPRIATE VENUE ....................................................................16

CONCLUSION ..................................................................................................................19

## TABLE OF AUTHORITIES

**Cases**                                                                                    **Page**

Agency Rent A Car System, Inc. v. Grand Rent A Car Corp.,
    98 F.3d 25 (2d Cir. 1996).................................................................8, 9, 11

Alpi USA, Inc. v. D & F Fashion International Gemelli,
    No. 06 Civ. 2091 (RJH), 2007 WL 942096 (S.D.N.Y. March 29, 2007)...........6

Asahi Metal Industry Co., Ltd. V. Superior Court,
    480 U.S. 102, 107 S.Ct. 1026 (1987).................................................14

Bank Brussels Lambert v. Fiddler, Gonzalez & Rodriguez,
    305 F. 3d 120 (2d Cir. 2002)...........................................................13

Best Van Lines, Inc. v. Walker,
    No. 04-3924, 2007 WL 1815511 (2d Cir. June 26, 2007).........................7, 12

Burger King Corp. v. Rudzewicz,
    471 U.S. 462, 105 S.Ct. 2174 (1985).................................................14

Chong v. Healthtronics, Inc.,
    No.CV-06-1287 (SJF)(MLO), 2007 WL 1836831 (E.D.N.Y June 20, 2007)........8-9

Concesionaria DHM, S.A. v. International Finance Corp.,
    307 F. Supp. 2d 553 (S.D.N.Y. 2004)..............................................15, 16

Daniel v. Am. Bd. of Emergency Med.,
    428 F.3d 408 (2d Cir. 2005)............................................................15

D.H. Blair & Co. v. Gottdiener,
    462 F.3d 95 (2d Cir. 2006)...............................................................7

DiStefano v. Carozzi North America, Inc.,
    286 F.3d 81 (2d Cir. 2001)............................................................6-7

Glass v. S & M Nutec, LLC,
    456 F. Supp. 2d 498 (S.D.N.Y. 2006)................................................18

Gulf Insurance Co. v. Glasbrenner,
    417 F. 3d 353 (2d Cir. 2005)...........................................................15

In re Magnetic Audiotape Antitrust Litig.,
    334 F.3d 204 (2d Cir. 2003)..............................................................6

Jazini v. Nissan Motor Co.,
    148 F. 3d 181 (2d Cir. 1998)..............................................................................6

Jennis v. Rood,
    No. 5:03-CV-0772(LEK/GHL), 2007 WL 160741 (N.D.N.Y. Jan. 16, 2007)..................17

Kronisch v. United States,
    150 F.3d 112 (2d Cir. 1998).............................................................................12

Kulas v. Adachi,
    No. 96 CIV. 6674(MBM), 1997 WL 256957 (S.D.N.Y. May 16, 1997) ...........................9

Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.,
    84 F.3d 560, 568 (2d Cir. 1996)........................................................................14

Micromuse, Inc. v. Aprisma Management Technologies, Inc.,
    No. 05 Civ. 0894SAS, 2005 WL 1241924 (S.D.N.Y. May 25, 2005) .......................15, 17

New York Islanders Hockey Club, LLP v. Comerica Bank-Texas,
    71 F. Supp. 2d 108 (E.D.N.Y. 1999) .............................................................9, 12

PI, Inc. v. Quality Products, Inc.,
    907 F. Supp. 752 (S.D.N.Y. 1995) ...................................................................16

Ravenswood Investment Company, LP v. Bishop Capital Corp.,
    No. 04CV9266KMK, 2005 WL 236440 (S.D.N.Y. Feb. 1, 2005)...................................17

Sea Tow Services International v. Pontin,
    472 F. Supp. 2d 349 (E.D.N.Y. 2007) ...........................................................9, 16

Sunward Elec., Inc. v. McDonald,
    362 F.3d 17 (2d Cir. 2004)...............................................................................10

Treeline Investment Partners, LP v. Koren,
    No. 07 Civ. 1964 (DLC), 2007 WL 1933860 (S.D.N.Y. July 3, 2007)...............8, 9, 12, 13

## Statutes and Rules

28 U.S.C. § 1391(a)(2)....................................................................................15

28 U.S.C. § 1404(a) .................................................................................. 16-17

CPLR § 302(a)(1) ......................................................................................7, 8, 13

Fed. R. Civ. P. 12(b)(2)..................................................................................6, 15

Fed. R. Civ. P. 12(b)(3)...................................................................................15

Plaintiff DLJ Mortgage Capital, Inc. ("plaintiff" or "DLJMC") respectfully submits this Memorandum of Law and the accompanying Affidavit of Bruce S. Kaiserman, and the exhibits annexed thereto (the "Kaiserman Aff.") and Declaration of Allan N. Taffet, Esq., and the exhibits annexed thereto (the "Taffet Dec.") in opposition to the motion of defendant Cameron Financial Group, Inc. ("defendant" or "Cameron") to dismiss DLJMC's complaint for lack of jurisdiction and improper venue or in the alternative requesting a change of venue.

## PRELIMINARY STATEMENT

For five years, Cameron repeatedly directed its substantial business activities, involving hundreds of millions of dollars, to banking institutions in New York City. In light of such extensive and consistent activities in New York, Cameron's present effort to avoid the jurisdiction of this Court is utterly groundless.

Cameron's business involves making mortgage loans to third party borrowers, and then selling such loans to financial institutions. DLJMC, operating from its headquarters in New York, is one such buyer of loans from Cameron.

During the five-year period from 2001 through 2006, Cameron reached into New York to sell DLJMC over 1,700 mortgage loans, in over 575 separate transactions. Thousands of communications were exchanged between the parties by e-mail, phone and fax. The transactions were governed by New York law. And DLJMC paid over $300 million.

Under the relevant purchase agreements, Cameron was required to repurchase mortgage loans from DLJMC under certain circumstances. On 26 different occasions, Cameron did so and paid DLJMC -- to its accounts in New York -- over $1.79 million. More recently, however, Cameron defaulted on its obligation to repurchase 12 loans of approximately $2.7 million. The present action by DLJMC ensued as a result of Cameron's default.

Through its sale of mortgage loans to DLJMC, Cameron's business activities in New York were regular and extensive, and plainly sufficient to satisfy the requirements for this Court's exercise of personal jurisdiction. Cameron's arguments to the contrary are premised on gross mischaracterizations. For example, Cameron suggests that its sale of loans carried no further obligations, even though the relevant agreements require Cameron to repurchase the loans under certain circumstances. Cameron also asserts that it has no other contacts with New York businesses or contracts with New York forum selection clauses. This is plainly contradicted by the complaint against Cameron filed in this Court on May 25, 2007 by a Deutsche Bank affiliate, also based in New York, which describes Cameron's similar mortgage loan sales in New York, pursuant to agreements governed by New York law and including a New York forum selection clause.

Cameron's venue-related arguments are similarly misguided. Cameron's sale activity, and its breach of straightforward contractual obligations, occurred in New York. The dispute is governed by New York law. Although live testimony is not likely to be required in this document-oriented case, Cameron has inappropriately attempted to manufacture a "witness" in California by retaining a non-party consultant, who has no firsthand knowledge of any facts and is allegedly offered as a purported expert regarding damages. There is simply no reason, therefore, to dismiss this action for lack of venue or transfer this case away from this District.

Accordingly, Cameron should not be permitted to evade this Court or otherwise delay this case, and its motion should be immediately denied.

## STATEMENT OF FACTS

### I.    The Parties

DLJMC is a Delaware corporation and maintains its principal place of business in New York, New York.  Complaint ¶ 3.

Cameron is a California corporation and maintains its principal place of business in San Luis Obispo, California.  Id. ¶ 4.

Cameron is in the business of originating mortgage loans to third parties, and thereafter selling such mortgage loans to financial institutions.  DLJMC is in the business of purchasing mortgage loans from originating lenders, and thereafter securitizing such mortgage loans.[1]

### II.    The Purchase Agreements

In January 2001, Cameron applied to become an approved Credit Suisse First Boston lender.  Cameron prepared and sent a "correspondent application" to Credit Suisse First Boston in New York, which included various supporting materials such as Cameron's financial statements and a corporate resume.[2]

As a result of that application, DLJMC and Cameron entered into a Seller's Purchase, Warranties and Interim Servicing Agreement (the "Original Purchase Agreement"), dated June 1, 2001.  Complaint ¶ 5.

On April 1, 2005, DLJMC and Cameron entered into an Amended and Restated Seller's Purchase, Warranties and Interim Servicing Agreement (the "Amended Purchase Agreement" and, collectively with the Original Purchase Agreement, the "Purchase Agreements").  Id. ¶ 6.

---

[1] In a typical securitization, loans with particular characteristics are packaged, or "pooled" together and deposited into a trust.  The trust then issues securities to investors in the form of certificates or bonds, which represent an ownership interest in the trust.

[2] In 2001, DLJMC was an affiliate of the parent entity Credit Suisse First Boston LLC, and as such, was often referred to by third parties as Credit Suisse First Boston.  Solely for the purposes of this Memorandum, no distinction is made between DLJMC and Credit Suisse First Boston.

The Purchase Agreements contemplate that from time to time Cameron would sell mortgage loans to DLJMC. Id. ¶ 7. The terms of the Purchase Agreements include, among other things, detailed representations, warranties and covenants as to each mortgage loan sold to DLJMC. Kaiserman Aff., Exs. A and B, §§ 3.02.

The Purchase Agreements all provide that they are to be governed by the laws of New York. Id. at §§ 12.04.

Following the execution of the Original Purchase Agreement, Cameron began selling mortgage loans to DLJMC. In the second half of 2001, Cameron sold two loans to DLJMC. The purchase and sale activity drastically increased in subsequent years. In 2002, Cameron sold 337 loans for over $66 million. In 2003, Cameron sold 515 loans for over $104 million. And in 2004, Cameron sold 651 loans for over $92 million. Kaiserman Aff., ¶ 10.

The following chart sets forth the number and amount of loans sold by Cameron to DLJMC under the Purchase Agreements.

| Year | No. of Loans Purchased | Total Amount Purchased |
|------|------------------------|------------------------|
| 2001 | 2 | $ 506,000 |
| 2002 | 337 | $ 66,294,369 |
| 2003 | 515 | $ 104,294,416 |
| 2004 | 651 | $ 92,589,693 |
| 2005 | 117 | $ 26,550,033 |
| 2006 | 86 | $ 15,523,489 |
| 2007 | 6 | $ 1,111,340 |

Kaiserman Aff., Ex. C.

In all, during the six year period from the execution of the Original Purchase Agreement through the commencement of this litigation, Cameron sold 1,714 loans to DLJMC for a total of $306,869,340. Kaiserman Aff., ¶ 11 and Ex. C.

In addition, pursuant to its obligations under the Purchase Agreements, Cameron repurchased from DLJMC 26 loans for approximately $1.79 million. Cameron's payment in

respect of each such repurchased loan was accomplished by wire transfer into DLJMC's account located in New York, New York. Id. ¶ 12.

In connection with the purchase and sale of the mortgage loans, Cameron and DLJMC exchanged thousands of email, telephone and facsimile communications. These communications related to a wide range of topics, including offers by Cameron to purchase mortgage loans, details and diligence-related matters concerning such mortgage loans, and the logistics of the purchase/sale transactions. Id. ¶ 13.

### III.  **Breach of the Purchase Agreements**

This litigation arises from Cameron's breach of its obligations under the Purchase Agreements.

The Purchase Agreements require Cameron to repurchase mortgage loans under certain circumstances. In particular, Sections 3.05 of the Purchase Agreements, entitled "Repurchase of Mortgage Loans with Early Payment Defaults," require Cameron to repurchase from DLJMC those mortgage loans as to which the underlying borrower defaulted on his or her payment obligations within three months after receiving such loan.

As described in the Complaint, the borrowers under 12 loans committed those so-called Early Payment Defaults. Despite DLJMC's demand that Cameron repurchase those loans, Cameron has failed or refused to do so.

DLJMC filed this action against Cameron on May 11, 2007. After the filing of the complaint in this action, DLJMC learned that a similar action was commenced against Cameron in this Court by another New York financial institution, on May 25, 2007. That action is referred to as DB Structured Products, Inc. v. Cameron Financial Group, Inc., Index No. 07 Civ. 4124 (Cote, J.) . See Kaiserman Aff., ¶ 17.

5

In that action, DB Structured Products, Inc. ("DBSP"), an affiliate of Deutsche Bank headquartered in New York, alleges that Cameron sold mortgage loans to DBSP pursuant to certain mortgage loan purchase agreements. The purchase agreements between Cameron and DBSP include provisions choosing New York as the governing law and selecting the New York courts as the appropriate forum for the resolution of disputes. Taffet Dec., Ex. A, at ¶¶ 6-10 (and at Exs. 1 and 2 to Ex. A) [Complaint in DB Structured Products, Inc. v. Cameron Financial Group, Inc., Index No. 07 Civ. 4124 (Cote, J.)].

## ARGUMENT

### I.

### THIS COURT HAS PERSONAL JURISDICTION OVER CAMERON BECAUSE CAMERON TRANSACTED BUSINESS IN NEW YORK PURSUANT TO THE PURCHASE AGREEMENTS

Cameron is subject to personal jurisdiction in New York because its substantial contacts with DLJMC in New York satisfy the requirements of New York's long-arm statute and the principles of due process under the United States Constitution.

On a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2), it is the plaintiff's burden to establish that the court has jurisdiction over the parties. Alpi USA, Inc. v. D&F Fashion International Gemelli, No. 06 Civ. 2091 (RJH), 2007 WL 942096, at * 2 (S.D.N.Y. March 29, 2007) (internal citations omitted). At the initial pleading stage, however, a plaintiff may defeat a motion to dismiss for lack of personal jurisdiction through a prima facie showing of personal jurisdiction over defendants. In re Magnetic Audiotape Antitrust Litig., 334 F.3d 204, 206 (2d Cir. 2003); Jazini v. Nissan Motor Co., 148 F. 3d 181, 184 (2d Cir. 1998). Moreover, in considering a Rule 12(b)(2) motion, the courts construe "the pleadings and affidavits in the light

most favorable to [plaintiff], resolving all doubts in [plaintiff's] favor." DiStefano v. Carozzi North America, Inc., 286 F.3d 81, 84 (2d Cir. 2001).

In a diversity case, the issue of personal jurisdiction over a defendant is determined by the law of the forum state (that is, the State's "long-arm statute") and is subject to the requirements of due process under the Constitution of the United States. E.g., D.H. Blair & Co. v. Gottdiener, 462 F.3d 95, 104 (2d Cir. 2006). As discussed below, Cameron's contacts with New York are sufficiently extensive to satisfy each of these requirements.

### 1. Cameron Is Subject to Personal Jurisdiction Under New York's Long-Arm Statute Due To Its Contractual Relationship With DLJMC

The exercise of personal jurisdiction over Cameron in New York is proper because Cameron has transacted considerable business in New York under the Purchase Agreements, and DLJMC's claims against Cameron for breach of the Purchase Agreements have a substantial nexus to such business transactions.

New York's long arm statute provides that "a court may exercise personal jurisdiction over any non-domiciliary . . . who in person or through an agent . . . transacts any business within the state or contracts anywhere to supply goods or services in the state." New York Civil Practice Law and Rules ("CPLR") § 302(a)(1). In order to determine jurisdiction under CPLR § 302(a)(1), "a court must decide (1) whether the defendant 'transacts any business in New York' and, if so, (2) whether this cause of action 'aris[es] from' such a business transaction." Best Van Lines, Inc. v. Walker, No. 04-3924, 2007 WL 1815511, at *6 (2d Cir. June 26, 2007).

### a.    Cameron Has Transacted Business In New York

To determine whether a defendant has purposefully transacted business in New York, the courts will look to "the totality of the defendant's activities within the forum." Id. (internal

citations omitted).  The Second Circuit has enumerated a variety of factors to guide this

determination, including:

> (i) whether the defendant has an on-going contractual relationship with a New
> York corporation; (ii) whether the contract was negotiated or executed in New
> York and whether, after executing a contract with a New York business, the
> defendant has visited New York for the purpose of meeting with parties to the
> contract regarding the relationship; (iii) what the choice-of-law clause is in any
> such contract; and (iv) whether the contract requires [defendants] to send notices
> and payments into the forum state or subjects them to supervision by the
> corporation in the forum state.

Agency Rent A Car System, Inc. v. Grand Rent A Car Corp., 98 F.3d 25, 29 (2d Cir. 1996)

(internal citations omitted).  In applying the above-listed factors, "no one factor is dispositive"

and the court must look at "the totality of circumstances" concerning the defendant's interactions

with, and activities within, the state.  Id.

Each of these factors is satisfied in this case.  First, Cameron has clearly had an on-going

contractual relationship with DLJMC.  This relationship spanned a period of more than six years

and resulted in over 575 transactions, concerning more than 1,700 loans between the parties

worth over $300 million.  Kaiserman Aff., ¶ 11 and Ex. A.   In addition to these transactions,

Cameron exchanged thousands of emails, telephone calls and facsimiles with DLJMC, and thus

projected itself into on-going and substantial commerce in New York.  See Treeline Investment

Partners, LP v. Koren, No. 07 Civ. 1964 (DLC), 2007 WL 1933860, at *3 (S.D.N.Y. July 3,

2007) (stating "while telephone contacts between non-domiciliary defendants and a New York

party are insufficient by themselves to confer jurisdiction under CPLR 302(a)(1), . . . a non-

domiciliary defendant will be subject to jurisdiction if the defendant uses these telephone

communications to deliberately 'project' himself into business transactions occurring within the

state.") (internal citations omitted); Chong v. Healthtronics, Inc., No. CV-06-1287 (SJF)(MLO),

2007 WL 1836831, at *9 (E.D.N.Y. June 20, 2007) (stating that defendant's use of telephone,

facsimiles or emails to communicate with plaintiff in New York may be sufficient to establish that the defendant transacted business in New York if the defendant intended "to project itself into ongoing New York commerce") (citing Kulas v. Adachi, No. 96 CIV. 6674(MBM), 1997 WL 256957, at *7 (S.D.N.Y. May 16, 1997)).

In addition, Cameron has other extensive contractual relationships with New York businesses. As set forth in the action brought by DBSP, Cameron sold multiple millions of dollars in mortgage loans to DBSP in New York. Taffet Dec., Ex. A.

The second factor used to determine whether Cameron transacted business in New York is satisfied because the Purchase Agreements were at least partially negotiated and executed in New York and Cameron directed meaningful communications to DLJMC in New York. The Second Circuit has stated that "we question whether in an age of email and teleconferencing, the absence of actual personal visits to the forum is any longer of critical consequence." Agency Rent A Car System, 98 F.3d at 30; see Sea Tow Services International v. Pontin, 472 F. Supp. 2d 349, 360 (E.D.N.Y. 2007); see also New York Islanders Hockey Club, LLP v. Comerica Bank-Texas, 71 F. Supp. 2d 108, 114 (E.D.N.Y. 1999). In Treeline, this Court held that defendant was engaged in purposeful activity in New York by negotiating sales contracts with New York plaintiffs via telephone, email and fax even though the actual contracts were not executed in New York. Treeline Investment Partners, 2007 WL 1933860, at *3. As in Treeline, Cameron conducted email, telephone and fax communications regarding the negotiation of and performance under the Purchase Agreements. These communications were directed to DLJMC in New York, and are sufficient to bolster the point that Cameron transacted business in New York.

The third factor in the "transacting business" test is satisfied because the Purchase Agreements contain New York choice of law provisions. "A choice of law clause is a <u>significant factor</u> in a personal jurisdiction analysis because the parties, by so choosing, invoke the benefits and protections of New York law." <u>Sunward Elec., Inc. v. McDonald</u>, 362 F.3d 17, 23 (2d Cir. 2004)) (emphasis added). Here, section 12.04 of each Purchase Agreement, entitled "Governing Law" states:

> [t]his Agreement shall be governed by and construed in accordance with the **laws of the State of New York**, without regard to its conflict of law provisions, except to the extent preempted by Federal Law. The obligations, rights and remedies of the parties hereunder shall be determined in accordance with such laws.

Kaiserman Aff., Exs. A and B, §§ 12.04 (emphasis added). Therefore, Cameron invoked the benfits of New York by agreeing that New York law would govern the parties' contractual relationship.

The fourth factor in the "transacting business" test is satisfied because the Purchase Agreements require Cameron to send notices and payments into New York. Sections 12.05 of the Purchase Agreements, entitled "Notices," require Cameron to direct all notices and communications to DLJMC in New York. <u>See</u> Kaiserman Aff, Exs. A and B, §§ 12.05. Further, Cameron was required to repurchase loans by remitting payments to DLJMC's account in New York. <u>See</u> Complaint, Exs. A-H.

Accordingly, application of each of the relevant factors demonstrates that Cameron transacted business in New York. The arguments advanced by Cameron to counter this conclusion are simply wrong as a matter of fact and law. First, Cameron claims that it "does not have an on-going contractual relationship with DLJ" and that once a loan was sold to DLJMC, there was allegedly no further relationship between the parties. Fierro Cert. ¶ 8, Def. Mem. of

Law at 6.[3]  As discussed above, this assertion ignores the fact that Cameron and DLJMC have

been transacting business since 2001 under the Purchase Agreements, that Cameron sold

DLJMC over 1700 loans for more than $300 million, and that Cameron retained an obligation,

among others, to repurchase loans under certain circumstances (and, indeed, Cameron

repurchased loans on 26 occasions in the past).  In addition, Cameron makes the false assertion

that DLJMC "has not identified any other document in which Cameron consented to the

jurisdiction of the New York courts, and in fact no such document exists." Fierro Cert. ¶ 7.  The

action brought by DBSP reveals that the agreements between Cameron and DBSP include a New

York forum selection clause.  Taffet Dec., Ex. A.

　　　Further, Cameron mischaracterizes the notification factor of the "transacting business"

test.  In considering this factor, Courts look to "whether the contract requires [defendant] to send

notices or payments into the forum state." Agency Rent A Car System, 98 F.3d at 29.

Cameron's argument that the Purchase Agreements provide for notices to be sent to Cameron at

its offices in California is irrelevant, because it says nothing about the nature of the notices or

payments by Cameron.  The Purchase Agreements clearly require notices and payments by

Cameron to be directed to DLJMC in New York.  Kaiserman Aff., Exs. A and B, §§ 12.04.

　　　Cameron's final attempt to deny that it transacted business in New York is its argument

that the Purchase Agreements contemplated that Cameron would maintain books and records in

its California office.  Fierro Cert. ¶ 11; Def. Mem. of Law at 7.  However, the same provision of

each Purchase Agreement also obligates Cameron to make those books and records "available

for inspection by the Purchaser, or its designee and shall deliver to Purchaser upon demand,

---

[3] The Memorandum of Law of Defendant Cameron Financial Group, Inc. in Support of the Motion to
Dismiss Plaintiff's Complaint for Lack of Jurisdiction and Improper Venue or in the Alternative to
Change Venue is hereinafter referred to as "Def. Mem. of Law."

evidence of compliance with all federal, state and local laws, rules and regulations, and requirements of Fannie Mae or Freddie Mac." Kaiserman Aff., Exs. A and B, §§ 2.05.

In view of the application of the above-described factors, therefore, the Court should conclude that Cameron transacted business in New York, and that the requirements of the first prong of New York's long-arm statute have been satisfied.

<b>b.    This Action Arises From Transactions With DLJMC in New York</b>

The second prong of New York's long-arm statute is satisfied because DLJMC's claims against Cameron arise out of Cameron's business transactions within New York.  To satisfy the second prong of New York's long-arm jurisdiction test, the plaintiff must "show that the causes of action 'arise out of' the defendant's transactions within the state." New York Islanders, 71 F. Supp. 2d at 114 (citing Kronisch v. United States, 150 F.3d 112, 130 (2d Cir. 1998)).  "[A] claim 'arises from' a particular transaction when there is 'some articulable nexus between the business transacted and the cause of action sued upon, or when there is a substantial relationship between the transaction and the claim asserted.'" Treeline Investment Partners, 2007 WL 1933860, at *3; Best Van Lines, 2007 WL 1815511, at *6.

Cameron transacted business within the State of New York through its sale of mortgage loans to DLJMC under the Purchase Agreements.  DLJMC's breach of contract and other claims are a direct result of these transactions and Cameron's failure to perform its obligations under the Purchase Agreements.  Thus, there is a clear nexus between DLJMC's causes of action and Cameron's business transactions in New York.

**2.  The Exercise of Jurisdiction Over Cameron Satisfies
    The Constitutional Requirement of Due Process**

The requirements of due process under the Fourteenth Amendment of the United States Constitution are satisfied in the instant action as a result of Cameron's extensive and purposeful

transactions with DLJMC in New York. Once jurisdiction has been established under CPLR 302(a)(1), the Court must determine whether the exercise of long-arm jurisdiction satisfies the constitutional due process requirement. Bank Brussels Lambert v. Fiddler, Gonzalez & Rodriguez, 305 F. 3d 120, 127 (2d Cir. 2002). "To do so, [courts] undertake an analysis consisting of two components: the "minimum contacts" test and the "reasonableness" inquiry." Id.

The first part of the due process analysis examines whether the defendant has certain "minimum contacts" with the forum state. Id. Minimum contacts exist "where the defendant has 'purposefully availed' itself of the privilege of doing business in the forum and could foresee being haled into court there.'" Id. (internal citations omitted).

Here, Cameron has had the requisite contacts with New York and has purposefully availed itself of the privilege of conducting business in New York. Cameron approached DLJMC in New York via its application requesting status as a correspondent lender. Thereafter, over the course of six years, Cameron offered and sold DLJMC thousands of mortgage loans for purchase worth hundreds of millions of dollars, in transactions governed by New York law. Over the course of their relationship, Cameron was directing its communications regarding the mortgage loans and its business to DLJMC in New York via telephone, fax and email. See Treeline Investment Partners, 2007 WL at 19833860, at * 4 (finding a sufficient connection with the forum state where "the transactions were partly negotiated in New York and specifically directed at New York.")

The second part of the due process analysis examines "whether the assertion of personal jurisdiction comports with 'traditional notions of fair play and substantial justice'-- that is,

whether it is reasonable under the circumstances of the particular case." <u>Metropolitan Life Ins.</u>

<u>Co. v Robertson-Ceco Corp.</u>, 84 F.3d 560, 568 (2d Cir. 1996) (internal citations omitted)).

In order to determine whether the exercise of jurisdiction is reasonable, Courts

consider the following factors:

> (1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies.

<u>Asahi Metal Industry Co., Ltd. v. Superior Court</u>, 480 U.S. 102, 113-14, 107 S.Ct. 1026, 1033

(1987). Upon a plaintiff's threshold showing of minimum contacts required for the first test, the

defendant must present "a compelling case that the presence of some other considerations would

render jurisdiction unreasonable." <u>Burger King Corporation v. Rudzewicz</u>, 471 U.S. 462, 477,

105 S.Ct. 2174, 2184-85 (1985).

It is plainly reasonable for a New York court to exercise jurisdiction in the instant action.

New York has an interest in adjudicating a dispute that involves a corporation headquartered in

New York, under a contract partially negotiated and performed in New York and governed by

New York law. <u>See Id</u>. Also, adjudicating this action in New York will allow DLJMC, based in

New York, to obtain efficient and effective relief. <u>Id.</u> Although it may be a burden for Cameron

to litigate this dispute in New York, there would be a similar burden imposed on DLJMC if the

litigation proceeds elsewhere.

Accordingly, this Court's exercise of jurisdiction over Cameron is appropriate as a matter

of due process.

## II.

### VENUE IN THE SOUTHERN DISTRICT OF NEW YORK IS PROPER AS A SUBSTANTIAL PART OF THE RELEVANT EVENTS AND OMISSIONS OCCURRED IN NEW YORK

New York is the proper venue for this action because performance under the Purchase Agreements occurred or was required to occur in New York. Courts "apply the same standard of review for Rule 12(b)(3) dismissals for improper venue as [they] do in Rule 12(b)(2) dismissals for lack of personal jurisdiction: If the court chooses to rely on pleadings and affidavits, the plaintiff need only make a prima facie showing of venue." Gulf Insurance Co., v. Glasbrenner, 417 F.3d 353, 355 (2d Cir. 2005). Thus, "[w]hen considering a motion to dismiss for improper venue pursuant to Rule 12(b)(3), the Court must accept the facts alleged in the complaint as true and draw all reasonable inferences in the plaintiff's favor." Micromuse, Inc. v. Aprisma Management Technologies, Inc., No. 05 Civ. 0894SAS, 2005 WL 1241924, at * 2 (S.D.N.Y. May 25, 2005).

Pursuant to 28 U.S.C. § 1391(a)(2), venue is a proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." In interpreting the "substantial part of the events or omissions" language of § 1391(a)(2), courts have determined that "venue is appropriate in each district where a substantial part of the events or omissions occurred, and thus venue may be appropriate in [a] district even if a greater portion of events occurred elsewhere." Concesionaria DHM, S.A. v. International Finance Corp., 307 F. Supp. 2d 553, 559 (S.D.N.Y. 2004). Further, "[w]hen material acts or omissions within the forum bear a close nexus to the claims, they are properly deemed 'significant' and, thus, substantial." Daniel v. Am. Bd. of Emergency Med., 428 F.3d 408, 433 (2d Cir. 2005). "In determining whether venue is proper

for a breach of contract action under § 1391(a)(2), courts consider a number of factors, including where the contract was negotiated or executed, where it was to be performed, and where the alleged breach occurred." PI, Inc. v. Quality Products, Inc., 907 F.Supp. 752, 758 (S.D.N.Y. 1995).

Cameron's obligations under the Purchase Agreement were to be performed in New York City. As previously detailed, Cameron sold numerous loans to DLJMC in New York and directed numerous payments and communications to DLJMC in New York (including Cameron's request to enter into the Purchase Agreements and other matters pertaining to performance under the Purchase Agreements). Cameron has defaulted in its obligation to repurchase certain mortgage loans. If Cameron had properly performed its obligation to repurchase the required loans under the Purchase Agreements, Cameron's payments would have been made (as its prior repurchase payments were made) to DLJMC's account in New York. See Sea Tow Services International, 472 F. Supp. 2d at 364 (stating defendant's failure to make payments into plaintiff's New York bank accounts makes venue proper in New York) (citing Concesionaria, 307 F. Supp. 2d at 560-61)) (other internal citations omitted).

Because Cameron's performance under the Purchase Agreements either occurred or was required to occur in New York City, the Southern District of New York is the appropriate venue for this action.

## III.

### CAMERON'S REQUEST TO TRANSFER VENUE SHOULD BE DENIED AS IT CANNOT ESTABLISH THAT CALIFORNIA IS A MORE APPROPRIATE VENUE

Cameron cannot demonstrate that California is a more appropriate venue than New York for the adjudication of this dispute. In order to transfer venue pursuant to 28 U.S.C. §1404(a),

"[t]he defendant must make a 'convincing showing' that the action would be better litigated elsewhere." Micromuse, 2005 WL 1241924, at *2 (internal citations omitted). Factors considered by courts in determining whether transfer of venue is appropriate include the:

> (1) deference accorded to plaintiff's choice of forum; (2) convenience of witnesses and parties; (3) situs of operative facts; (4) interests of justice and judicial economy; (5) relative ease to access of sources of proof; (6) availability of process to compel unwilling witnesses; (7) relative means of the parties; and (8) forum's familiarity with the governing law.

Micromuse, 2005 WL 1241924, at *2; see Jennis v. Rood, No. 5:03-CV-0772(LEK/GHL), 2007 WL 160741, at *3 (N.D.N.Y. Jan. 16, 2007) (stating that "the party moving for change of venue bears the burden of 'establish[ing] that the alternative forum is clearly more appropriate . . . . Dismissal will generally be inappropriate 'unless the balance of convenience tilts strongly in favor of trial in the foreign forum.'") (internal citations omitted). In addition, "the defendant moving for a transfer must, therefore, demonstrate 'that transfer is in the best interest of the litigation.'" Ravenswood Investment Company, LP v. Bishop Capital Corp., No. 04CV9266KMK, 2005 WL 236440, at *3 (S.D.N.Y. Feb. 1, 2005) (internal citations omitted).

Applying the foregoing factors, Cameron has failed to establish, and cannot establish, that the Central District of California is more convenient than New York. In fact, each such factor either favors New York, or at worst, is neutral.

1. Plaintiff's choice of forum. This factor plainly favor's DLJMC's chosen forum of New York. See Micromuse, 2005 WL 1241924 at *3 (stating that plaintiff's choice of forum is to be given substantial weight).

2. Convenience of witnesses. This case is likely to be resolved based on documentary evidence, with little or no need for live testimony. Cameron only identifies one witness with particularity, Gary Shev -- non-party -- specifically, an employee of a consultant to Cameron. Fierro Cert. ¶ 13; Def. Mem. of Law at 11. Cameron's reliance on Mr. Shev's testimony should be disregarded because: (a) Cameron does

not meet its burden because it fails to specify the substance of Mr. Shev's testimony; and (b) it appears that Mr. Shev is most likely a purported expert witness as to damages and as such his location is irrelevant to a change of venue analysis. See Glass v. S & M Nutec, LLC, 456 F. Supp. 2d 498, 502 (S.D.N.Y. 2006) (stating that "it is well settled that the location of expert witnesses is irrelevant to a transfer decision."). Accordingly, this factor does not favor a transfer of venue.

3. Situs of operative facts. Cameron's business and performance under the Purchase Agreements were directed to DLJMC's principal place of business in New York, and Cameron's default relates to its failure to make payment to DLJMC in New York. This factor, therefore, favors New York.

4. Interests of justice and judicial economy. This factor favors New York because New York law applies to this dispute, it involves a corporation headquartered in New York, and the breach occurred in New York.

5. Access to proof. Although Cameron has documents in California, DLJMC's documents are in New York. This factor is therefore neutral and cannot support a change of venue.

6. Availability of process to compel witnesses. Although Cameron's employees or witnesses may be in California, DLJMC's would be located in New York. This factor is therefore neutral and cannot support a change of venue.

7. Means of the parties. In light of the substantial amount of loans originated and sold by Cameron, it must have means to litigate in New York. Consequently, this factor is neutral and cannot support a change of venue.

8. Forum's familiarity with the governing law. It is reasonable to expect that this Court is more familiar with New York law than a District Court located in California. Consequently, this factor strongly favors New York.

Therefore, venue is appropriate in New York and the action should not be transferred.

## CONCLUSION

For the foregoing reasons, Cameron's motion to dismiss should be denied in its entirety.

Dated:  New York, New York
        July 2̲, 2007

                        Duval & Stachenfeld LLP
                        Attorneys for Plaintiff
                        DLJ Mortgage Capital, Inc.

By: _____
                        Allan N. Taffet, Esq. (AT-5181)
                        Jennifer A. Kelly, Esq. (JK-0309)
                        300 East 42nd Street
                        New York, New York 10017
                        Tel. No.:  (212) 883-1700