Michael Einbinder (ME-3930)
Linden E. Thomas (LT-9974)
EINBINDER & DUNN, LLP
104 West 40th Street
New York, NY 10018
(212) 391-9500
(212) 391-9025 - facsimile

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
DLJ MORTGAGE CAPITAL, INC.,                **Case No. 07 CV 3746**
                                                                   **(LAP)(HP)**
           Plaintiff,

    -against-

CAMERON FINANCIAL GROUP, INC
-------------------------------------------------------------------x

**REPLY MEMORANDUM OF LAW OF DEFENDANT CAMERON FINANCIAL GROUP INC., IN SUPPORT OF THE MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR LACK OF JURISDICTION AND IMPROPER VENUE OR IN THE ALTERNATIVE TO CHANGE VENUE**

Case 2:07-cv-03746-LAP   Document 17   Filed 08/10/2007   Page 2 of 15

TABLE OF CONTENTS

TABLE OF AUTHORITIES....................................................................................................ii

PRELIMINARY STATEMENT..............................................................................................1

RELEVANT FACTS................................................................................................................1

ARGUMENT............................................................................................................................1

      POINT I:     THERE IS NO JURISDICTION OVER CAMERON UNDER CPLR §301...................................................................................................1

      POINT II:    THERE IS NO JURISDICTION OVER CAMERON UNDER CPLR§302(a)(1)..........................................................................................1

            A. THERE IS NO ONGOING CONTRACTUAL RELATIONSHIP........................................................................................2

            B. THE AGREEMENT WAS NOT NEGOTIATED OR EXECUTED IN NEW YORK ...................................................................4

            C. CAMERON DID NOT PERFORM THE AGREEMENT IN NEW YORK................................................................................................5

            D. NO NOTICES OR PAYMENTS WERE REQUIRED TO BE SENT TO NEW YORK.............................................................................6

            E. A CHOICE-OF-LAW CLAUSE IS NOT SUFFICIENT BASIS FOR JURISDICTION......................................................................7

      POINT III:   VENUE IN NEW YORK IS IMPROPER......................................7

      POINT IV:   CALIFORNIA IS A MORE CONVENIENT FORUM.................8

CONCLUSION………………………………………………………………………..10

TABLE OF AUTHORITIES

**FEDERAL CASES**

Chet Baker Enters., L.L.C. v. Fantasy, Inc.,
257 F.Supp.2d 592 (S.D.N.Y. 2002)………......................................................................8, 9

Chong v. Healthtronics Inc.,
 2007 WL 1836831(E.D.N.Y.
2007)…………………………………………………………………………………….3,4,5

Credit Alliance Corp., v. Nationwide Mutual Ins. Co.,
433 F. Supp 688 (S.D.N.Y. 1977)……………………………………………….............9

I.M.D. USA, Inc., v. Shalit,
 925 F. Supp. 2d 315 (S.D.N.Y. 2000)………………….................................................8

Int'l Customs Assoc., Inc.,
893 F.Supp. at 1261………………………………………….............................................7

Kulas v. Adachi,
 1997 WL 256957 (S.D.N.Y.
1997)…………………………………………………………………………….3,4,5

PI, Inc. v. Quality Prods., Inc.,
907 F.Supp. 752 (S.D.N.Y. 1995)………………………………………………………...7

Treeline Investment Partneres, LP v. Koren,
2007 WL 1933860 (S.D.N.Y.
2007)…….....................................................................................................3, 4, 5

Traver v. Officine Meccaniche Toshci SPA,
233 F.Supp.2d 404 (N.D.N.Y. 2002)….............................................................................2

Windmere Corporation v. Remington Prodcts, Inc.,
617 F. Supp. 8 (S.D. Fl.1985)………………………………………………….................9

**STATE CASES**

Agency Rent A Car System, Inc. v. Grand Rent A Car Corp.,
98 F.3d 25 (2d. Cir.
1996)…………………………………………………………….......................................2,5,6,7

<u>Paradise v. Allmark Equipment Co., Inc.</u>,
526 N.Y.S.2d 119 (2d. Dep't. 1988)…………………………………………………........6

<u>SBR Realty Corp., v. Pave-Mark Corporation</u>,
572 N.Y.S.2d 705 (2d. Dep't 1991)………………………………………………….....6


**FEDERAL RULES**

28 U.S.C. § 1391(a)(2)……………………………………………………….........7

**STATE RULES**

CPLR §301……………………………….……………………………………….......1

CPLR §302…………………………………………………………………………..4

CPLR §302(a)(1)………………………………………………………………...1,5,6

**PRELIMINARY STATEMENT**

Counsel for defendant Cameron Financial Services, Inc., ("Cameron") respectfully submits this reply memorandum of law in further support of Cameron's motion to dismiss this action for lack of jurisdiction and improper venue or in the alternative to change venue, and in response to plaintiff's opposition papers to the motion.

**RELEVANT FACTS**

The facts of this case are set forth at length in Cameron's original moving papers. Additional relevant facts are set forth in Carey Fierro's reply certification, dated August 9, 2007.

**ARGUMENT**
**POINT I**
**THERE IS NO JURISDICTION OVER CAMERON UNDER CPLR § 301**

Cameron argued in its initial moving papers that there is no basis for jurisdiction over it under CPLR §301. DLJ does not contend that jurisdiction can be asserted under CPLR §301. Accordingly, it is respectfully submitted that this Court does not have jurisdiction on that basis.

**POINT II**
**THERE IS NO JURISDICTION OVER CAMERON UNDER CPLR § 302(a)(1)**

Jurisdiction may be based on CPLR §302(a)(1), "as to a cause of action arising from the acts enumerated [therein when a non-domiciliary]… transacts any business within the state or contracts anywhere to supply goods or services in the state." It is undisputed that Cameron did not contract to supply goods or services within New York. Cameron sold DLJ loans. (Fierro Cert. ¶6.)   Similarly, Cameron did not "transact business within the state." As indicated in Cameron's initial motion papers, the following factors may be considered in determining whether Cameron transacted business in New York under CPLR §302(a)(1):

>(1) whether the defendant has an on-going contractual relationship with a New York business; (2) whether the contract was negotiated or executed in New York; (3) whether the defendant has visited New York for the purpose of meeting with the parties to the contract regarding performance thereof after the execution of the contract; and (4) whether the contract requires notices and payments to be sent into the forum state or otherwise perform in New York.

Traver v. Officine Meccaniche Toshci SPA, 233 F.Supp.2d 404, 410 (N.D.N.Y. 2002). Plaintiff relies on Agency Rent A Car System, Inc. v. Grand Rent A Car Corp., 98 F.3d 25, (2d. Cir. 1996), which applies each of the factors in Traver in addition to considering whether there is a choice-of-law clause is in the contract. No single factor is dispositive. *See*, Agency, 98 F.3d at 29. DLJ's application of these legal principles is wrong and there is no jurisdiction over Cameron.

A.   THERE IS NO ONGOING CONTRACTUAL RELATIONSHIP

The agreement between DLJ and Cameron, dated April 1, 2005 ("Agreement") does not require DLJ to purchase any loans from Cameron, nor does it require Cameron to sell any loans to DLJ. (Fierro Reply Cert. ¶5.) Cameron periodically advises several prospective purchasers that it has a package of loans or a single loan that it wishes to sell. (Fierro Reply Cert. ¶5.) Those prospective purchasers then have the option to purchase all, some or none of the loans. (Fierro Reply Cert. ¶5.) Each purchase is made pursuant to a trade letter and each such purchase is a separate and distinct transaction. (Fierro Reply Cert. ¶5.)

Although DLJ does not cite any case that purports to define an "ongoing contractual relationship," for purposes of asserting jurisdiction the decision in Agency, is instructive on this issue. In Agency the parties were a licensor and licensee of a rental car company whose contractual relationship spanned approximately thirty years and was characterized by one party's control over the other. For example, the licensee in Agency

2

was contractually required to use the licensor's computer system and to submit monthly reports and fees to the licensor, and to participate in a joint advertising campaign. Here, DLJ has failed to allege that it has any right to control the activities of Cameron or to identify any provision in the Agreement that required Cameron to provide periodic reports, to use DLJ's computer system or anything else that would tend to show DLJ's right to control Cameron.

DLJ's contention that the parties have had an on-going contractual relationship for the last six years involving 575 transactions is a gross distortion of the facts. Although the parties entered into an agreement on or about June 1, 2001, they completely replaced that agreement on or about April 1, 2005. (Fierro Reply Cert. ¶3.) Each of the 12 loans that are the subject of this action were sold and purchased pursuant to the April 1, 2005 agreement. The parties have engaged in a total of 25 separate transactions pursuant to the April 1, 2005 agreement, not the 575 transactions to which DLJ refers. (Fierro Reply Cert. ¶5.)

DLJ also contends that the court should exercise jurisdiction over Cameron because Cameron allegedly exchanged thousands of emails, telephone calls and faxes with DLJ. (DLJ Brief, p.8.) In support of that argument, DLJ cites Treeline Investment Partneres, LP v. Koren, 2007 WL 1933860 (S.D.N.Y. 2007), Chong v. Healthtronics Inc., 2007 WL 1836831(E.D.N.Y. 2007) and Kulas v. Adachi, 1997 WL 256957 (S.D.N.Y. 1997). None of those cases support DLJ's proposition. Neither the Chong or Kulas courts exercised jurisdiction over the out-of state defendant, and both courts indicated that communications by phone, fax and email are insufficient to assert jurisdiction under §302(a)(1). ("[D]efendant's use of telephone, facsimiles or emails to communicate with

3

plaintiff in New York are insufficient to establish that defendant transacted business in New York, absent any indication that defendant intended to 'project itself into ongoing New York commerce'.") Chong at 9; ("[P]laintiff's allegation that '[defendant] transacted business in New York through the making of telephone calls and through the transmission of facsimiles in New York' is insufficient to meet the transacting business standard.") Kulas at 8. DLJ's reliance on Treeline, which will be discussed below, is also misplaced. The Treeline court's discussion of the relevance of faxes, emails and telephone calls was focused on whether the subject agreement had been negotiated in New York, not whether those communications showed an on-going contractual relationship.

DLJ also contends that Cameron's dealings with New York-based Deutsche Bank constitute an on-going contractual relationship. That argument must be rejected because CPLR §302 provides for the exercise of jurisdiction when the plaintiff's cause of action arises from a non-domiciliary's transactions with the plaintiff, not with third-parties. Cameron's dealings with other entities are irrelevant to DLJ's claims in this case and to a jurisdictional analysis under §302.

Thus, there is no ongoing contractual relationship between Cameron and DLJ.

B.  THE AGREEMENT WAS NOT NEGOTIATED OR EXECUTED IN NEW YORK

DLJ does not contend that Cameron visited New York to negotiate or that it executed the Agreement in New York.[1] (*See also*, Fierro Cert., ¶7; Fierro Reply Cert., ¶4). Nonetheless, DLJ argues that jurisdiction can be founded on "thousands of emails,

---

[1] The only such statement was DLJ's counsel's assertion that the Agreement was "partially negotiated and executed in New York." Notably, Bruce Kaiserman, DLJ's Vice President, whose affidavit was submitted in opposition to Cameron's motion does not indicate that the Agreement was negotiated or executed in New York.

4

telephone calls and faxes" between the parties. DLJ's reliance upon those communications, as well as Agency and Treeline is misplaced.

The Agency court merely indicated that in an age of email it "question[ed]" the importance in-person visits. There is no indication that New York courts have put aside the importance of in-state visits to a jurisdictional analysis and the Agency court stated that in-state visits remain an important factor in its jurisdictional inquiry. *See* Agency, 98 F.3d at 29. Similarly, the Treeline court asserted jurisdiction over the out-of state defendant because he visited New York to negotiate that agreement and because he negotiated with the New York plaintiff via telephone, email and fax. Treeline 2007 WL 1933860 at 3. It is undisputed that Cameron never physically visited New York to negotiate the Agreement. To the extent that DLJ contends that Cameron visited New York by communicating via email, fax and phone, as a matter of law, such communications cannot form the basis of jurisdiction under CPLR §302(a)(1), (*See* Chong and Kulas, *supra*). Also, DLJ has not identified a single communication wherein Cameron purportedly negotiated the Agreement. DLJ's failure to identify any such communication is fatal. "In order to survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a prima facie showing that jurisdiction exists." Treeline, 2007 WL 1933860 at 2.

Thus, the parties' Agreement was not negotiated or executed in New York.

C. CAMERON DID NOT PERFORM THE AGREEMENT IN NEW YORK
It is undisputed that Cameron never visited New York relating to the Agreement. Although DLJ indicates that Cameron performed under the Agreement via email, telephone call and fax, DLJ fails to identify a single such communication wherein Cameron performed under the Agreement or discussed performance under the

5

Agreement. Cameron performed under the Agreement by, among other things, maintaining books and records, participating in closings by telephone, delivering documents from, and receiving notices, at its California offices. (Fierro Reply Cert. ¶4.) Further, pursuant to DLJ's instructions, Cameron performed under the Agreement by transferring mortgage loan documents, including with regard to the subject loans, from its California offices to "fulfillment centers" located throughout the country where due diligence reviews were performed on the loans. (Fierro Reply Cert. ¶5.) Thus, no goods or services were delivered in New York for the purposes of conferring jurisdiction under CPLR §302(a)(1). *See e.g.*, Paradise v. Allmark Equipment Co., Inc., 526 N.Y.S.2d 119 (2d. Dep't. 1988) wherein the court held that since the New York plaintiff took title to goods in New Jersey, which were ultimately destined for New York, jurisdiction could not be exercised under CPLR §302(a)(1). ("Knowledge that a product may be destined for a particular forum is insufficient, in the context of this case, to sustain jurisdiction.") *Id*., at 120. *See also*, SBR Realty Corp., v. Pave-Mark Corporation, 572 N.Y.S.2d 705, 707 (2d. Dep't 1991) ("Knowledge that a product may be destined for a particular forum, in and of itself, is insufficient to sustain jurisdiction.") Thus, since the subject goods were not delivered to New York jurisdiction cannot be exercised under CPLR §302(a)(1).

D.   NO NOTICES OR PAYMENTS WERE REQUIRED TO BE SENT TO NEW YORK

Although DLJ refers to a notice provision in the Agreement between the parties, the inclusion of a mutual notice provision in a contract is a matter of course. The fact is that Cameron was not required to provide notice to DLJ in relation to the subject transactions or in relation to any sale of loans to DLJ. DLJ's citation to the repurchase demands does not establish that the Agreement required Cameron to pay money into

DLJ's accounts in New York in the event of a repurchase of certain loans. (See DLJ's Brief, p. 10) DLJ has not cited any provision of the Agreement that requires Cameron to make payments in that manner. The fact that DLJ demanded that payment be made to its New York account is not nearly the same thing as "the contract requir[ing]…payments to be sent into the forum state." *See* Agency 98 F.3d at 29.

E.  A CHOICE-OF-LAW CLAUSE IS NOT SUFFICIENT BASIS FOR JURISDICTION

The choice-of-law clause in the Agreement cannot confer jurisdiction where, as here, "almost every other aspect of the contract and all of the circumstances surrounding the contract demonstrate that there is no personal jurisdiction." Int'l Customs Assoc., Inc., 893 F.Supp. at 1261. Here, DLJ drafted the Agreement and sent it to Cameron in California for execution, (Fierro Reply Cert. ¶4.) and although the Agreement indicates that New York law applies, it does not state that the New York courts have jurisdiction or that the case will be tried in the New York courts.

Accordingly, it is respectfully submitted that this Court does not have jurisdiction over Cameron and Cameron's motion should be granted.

**POINT III**
**VENUE IN NEW YORK IS IMPROPER**

In opposition to Cameron's motion, DLJ claims that venue is proper under 28 U.S.C. § 1391(a)(2). That contention must be rejected. The factors to be considered in determining whether venue is proper in New York were previously set forth in Cameron's motion papers. (*See* Cameron Brief, p.9; *see also* PI, Inc. v. Quality Prods., Inc., 907 F.Supp. 752 (S.D.N.Y. 1995).) Applying the PI factors to this action, it is clear that venue is improper in New York.

7

As indicated previously, the Agreement was not negotiated or executed in New York, nor did Cameron negotiate the Agreement with DLJ at all. Further, Cameron performed under the Agreement in California. Although DLJ argues that Cameron's performance under the Agreement included making payment into DLJ's New York bank account for any repurchased loans, DLJ has failed to cite any provision of the Agreement that required Cameron to make payments in that manner. DLJ's contention that the parties had a course of conduct whereby Cameron paid money into DLJ's New York account for repurchased loans also fails. Cameron has no record that it ever repurchased any loans from DLJ (Fierro Reply Cert. ¶7.)  DLJ does not argue that Cameron's alleged breach of the Agreement occurred in New York, but, if any such breach occurred it would have occurred in California, not New York. *See e.g.*, <u>I.M.D. USA, Inc., v. Shalit</u>, 925 F. Supp. 2d 315 (S.D.N.Y. 2000), wherein the court held that South Carolina was the proper venue for a New York diamond consignor's breach of contract and conversion claims because, among other reasons, the South Carolina consignee's alleged failure to pay for or return diamonds equal in value to the diamond's entrusted to him occurred in South Carolina. Here, as in <u>I.M.D.</u> Cameron's alleged violation of the Agreement occurred in California.

Therefore, it is respectfully submitted that venue in this Court is improper.

### POINT IV
### CALIFORNIA IS A MORE CONVENIENT FORUM

The factors for the court to consider in deciding whether to permit a change of venue were outlined in Cameron's initial motion papers. (*See* Cameron's Brief, p. 9-10; <u>Chet Baker Enters., L.L.C. v. Fantasy, Inc.</u>, 257 F.Supp.2d 592 (S.D.N.Y. 2002).)

8

Applying the factors in Chet, it is clear that the circumstances favor a transfer of this action to California. Cameron's alleged breach of the Agreement, the operative fact in this case, occurred in California, if at all. Also, DLJ does not contend that California would be an inconvenient forum for it because it believes that this action can be resolved on documents alone. On the other hand, New York would be an inconvenient forum for Cameron in that its employees are all domiciled in California. Similarly, California is a more convenient forum for the witnesses in this case. Unlike Cameron which, in its motion papers, identified Gary Shev, an employee of All Point Financial, Inc., a California-based consultant to Cameron as a potential witness in this case (Fierro Cert. ¶13.), DLJ has failed to identify any witnesses in New York. DLJ mischaracterizes Mr. Shev as a potential expert witness. Cameron has yet to determine which, if any, expert witness it may retain. Also, Cameron indicated in its motion papers that Mr. Shev is familiar with the facts regarding the disputed transactions and could testify regarding those transactions. (Fierro Cert. ¶13.) Also, since Mr. Shev is domiciled in California, a California District Court is better situated to compel his testimony, if necessary.

DLJ's choice of forum is entitled to little weight in this case. "[P]laintiff's choice of forum is not controlling, but is merely one of the factors to be considered by the court in determining the most convenient forum for the case. Furthermore, where the operative facts underlying the cause of action did not occur within the forum chosen by the Plaintiff, the choice of forum is entitled to less consideration." Windmere Corporation v. Remington Prodcts, Inc., 617 F. Supp. 8, 10 (S.D. Fl. 1985); *See also*, Credit Alliance Corp., v. Nationwide Mutual Ins. Co., 433 F. Supp 688, 689 (S.D.N.Y. 1977) Here,

9

DLJ's claims are based on Cameron's alleged breach of the Agreement, which occurred in California, if at all.

Thus, the balance of the factors shows that California is the more convenient forum.

## CONCLUSION

For the foregoing reasons, Cameron's motion should be granted in its entirety.

Dated: New York, New York
August 10, 2007

                            EINBINDER & DUNN, LLP

                            By: *Linden E. Thomas*
                                Michael Einbinder (ME3930)
                                Linden E. Thomas (LT9974)