USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 12/4/07

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------x

DLJ MORTGAGE CAPITAL, INC., Plaintiff,

-against-

CAMERON FINANCIAL GROUP, INC., Defendant.

-------------------------------x

07 Civ. 3746 (LAP)

MEMORANDUM AND ORDER

LORETTA A. PRESKA, U.S.D.J.

This action arises from an alleged breach of a contract between Plaintiff DLJ Mortgage Capital, Inc. ("Plaintiff"), and Defendant Cameron Financial Group, Inc. ("Defendant"). Plaintiff seeks specific performance of what it contends are Defendant's obligations under the contract, as well as attorney's fees and related costs incurred through Defendant's alleged breach. Defendant moves, pursuant to Federal Rules of Civil Procedure ("FRCP") 12(b)(2) and (b)(3), to dismiss for lack of personal jurisdiction and improper venue or, in the alternative, to transfer this case to the United States District Court for the Central District of California pursuant to 28 U.S.C. § 1404(a). For the following reasons, Defendant's motion is denied in its entirety.

BACKGROUND

Plaintiff is a Delaware corporation with its principal place of business in New York. (Compl. ¶ 1.)[1] Plaintiff's business consists of "purchasing mortgage loans from originating lenders, and thereafter securitizing such mortgage loans." (Kaiserman Aff. ¶ 4.)[2] Defendant is a California corporation with its principal place of business in San Luis Obispo, California. (Compl. ¶ 4.) Defendant's business consists of making mortgage loans directly to consumers located for the most part in California, Arizona, Nevada, and Washington. (Fierro Certif. ¶ 3.)[3]

A. The Agreement

In 2001, Defendant applied to become an approved lender with Plaintiff's then-parent corporation, Credit

---

[1] "Compl." refers to the Complaint and its attached exhibits filed on May 11, 2007. The facts set forth herein are taken from the Complaint except where otherwise noted.

[2] "Kaiserman Aff." refers to the "Affidavit of Bruce S. Kaiserman in Support of DLJ Mortgage Capital, Inc.'s Opposition to Cameron Financial Group, Inc.'s Motion to Dismiss Plaintiff's Complaint for Lack of Personal Jurisdiction and Improper Venue or in the Alternative Change of Venue" and its attached exhibits filed by Plaintiff on July 20, 2007. Bruce S. Kaiserman is one of Plaintiff's Vice Presidents. (Kaiserman Aff. ¶ 1.)

[3] "Fierro Certif." refers to the Certification of Carey Fierro and its attached exhibits filed by Defendant on June 29, 2007. Carey Fierro is Defendant's CEO. (Fierro Certif. ¶ 1.)

Suisse First Boston LLC. (Kaiserman Aff. ¶ 5.) As a result of that application, the parties entered into a "Seller's Purchase, Warranties and Interim Servicing Agreement" (the "Original Agreement"), whereby Defendant agreed to sell mortgage loans and attendant servicing rights to Plaintiff. (Compl. ¶ 5.) The Original Agreement was amended on April 1, 2005 (the "Agreement"), but the portions relevant to this action remained unchanged. In connection with the purchase and sale of the mortgage loans, the parties "exchanged thousands of email, telephone and facsimile communications" related to "negotiation of and performance under the . . . Agreement[.]" (Pl. Mem. 5.)[4] Plaintiff, however, drafted the Agreement, and none of Defendant's employees ever traveled to New York for negotiations.

The Agreement provides that the parties will enter into transactions involving mortgages "from time to time." (Agreement 1.) Under the Agreement, Defendant, as seller, must repurchase from Plaintiff any mortgage which is either "thirty (30) days or more delinquent with respect to any of the first three (3) Monthly Payments due to the [Plaintiff]

---

[4] "Pl. Mem." refers to the "Plaintiff DLJ Mortgage Capital, Inc.'s Memorandum of Law in Opposition to Defendant Cameron Financial Group, Inc.'s Motion to Dismiss the Complaint for Lack of Jurisdiction and Improper Venue or in the Alternative for Change of Venue" filed on July 20, 2007.

. . . immediately following the applicable Closing Date" or which is "in bankruptcy or litigation within the first three (3) months immediately following the applicable Closing Date," at Plaintiff's option. (Id. at 38.) In the event of a repurchase, Defendant agreed to make payment into a Custodial Account in Plaintiff's name, though the Agreement does not specify where that account is to be located. (Id. at 42-43.)

While the Agreement does not have a "forum-selection" clause, it does contain a "choice-of-law" clause providing that its provisions "shall be governed by and construed in accordance with the laws of the State of New York." (Id. at 74.)

B. Defendant Fails to Repurchase Certain Loans

After the Agreement went into effect in June 2001, Defendant sold Plaintiff a total of 1,714 loans, valued at $306,869,340. (See Kaiserman Aff. ¶ 10 & Ex. C.) The instant litigation centers on twelve loans, all issued between November 2005 and October 2006 and backed by real property collateral located in Arizona, California, Minnesota, Nevada, and Wyoming. (See Compl. 3-9.) In each of the loans in question, the borrower defaulted within the first three months after their respective loan's Closing

Date, Plaintiff demanded that Defendant repurchase, and Defendant failed to do so. (Id.) Plaintiff consequently brought this action.

DISCUSSION

A. Personal Jurisdiction

Plaintiff argues that personal jurisdiction exists pursuant to New York Civil Practice Law and Rules ("CPLR") section 302(a)(1) (McKinney 2001), which states that "a court may exercise personal jurisdiction over any non-domiciliary . . . who in person or through an agent . . . transacts any business within the state."

1. Applicable Legal Standards

In a diversity case, the issue of jurisdiction is governed by the law of the forum state. See D.H. Blair & Co., Inc. v. Gottdiener, 462 F.3d 95, 104 (2d Cir. 2006). The exercise of jurisdiction must also comport with due process. See id. at 105. On a motion to dismiss, the plaintiff need only make a prima facie showing that jurisdiction exists, see Best Van Lines, Inc. v. Walker, 490 F.3d 239, 242 (2d Cir. 2007), and because there has been no discovery in this case, Plaintiff also "need only make 'legally sufficient allegations of jurisdiction' through its pleading[s] and affidavits in order to survive

a motion to dismiss." Treeline Inv. Partners, LP v. Koren, No. 07 Civ. 1964, 2007 WL 1933860, at *2 (S.D.N.Y. July 3, 2007) (quoting In re Magnetic Audiotape Antitrust Litig., 334 F.3d 204, 206 (2d Cir. 2003) (per curiam)). For purposes of a Rule 12(b)(2) motion, the Court must "construe the pleadings and affidavits in the light most favorable to [Plaintiff], resolving all doubts in [its] favor." DiStefano v. Carozzi North Am., Inc., 286 F.3d 81, 84 (2d Cir. 2001).

CPLR section 302(a)(1) permits a court to exercise jurisdiction over an out-of-state defendant who "transacts any business within the state" provided that the plaintiff's cause of action "aris[es] from" the transaction.[5] Gottdiener, 462 F.3d at 104. To determine whether an out-of-state defendant transacts business in New York within the meaning of the statute, courts consider several factors, including:

> (i) whether the defendant has an on-going contractual relationship with a New York

[5] A claim "arises from" a transaction when there is "some articulable nexus between the business transacted and the cause of action sued upon, or when there is a substantial relationship between the transaction and the claim asserted." Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC, 450 F.3d 100, 103 (2d Cir. 2006) (citation omitted). While the parties dispute whether the Defendant transacted business in New York, Defendant does not contest that this claim "arises from" the transaction in question. (See generally Def. Mem. 4 8.)

> corporation; (ii) whether the contract was negotiated or executed in New York and whether, after executing a contract with a New York business, the defendant has visited New York for the purpose of meeting with parties to the contract regarding the relationship; (iii) what the choice-of-law clause is in any such contract; and (iv) whether the contract requires franchisees to send notices and payments into the forum state or subjects them to supervision by the corporation in the forum state.

Sunward Elecs., Inc. v. McDonald, 362 F.3d 17, 22-23 (citing Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp., 98 F.3d 25, 29 (2d Cir. 1996)). All these factors are relevant but not dispositive, and "the ultimate determination is based on the totality of the circumstances." Sunward, 362 F.3d at 23.

2. Defendant Has "Transacted Business" Under CPLR 302(a)(1)

Applying the factors enunciated in Sunward and examining the totality of the circumstances in this case, the Court has no difficulty concluding that personal jurisdiction exists. Defendant has "purposefully availed itself" of the privilege of conducting activity in the State of New York. See Best Van Lines, 490 F.3d at 246 (citations omitted).

First, there is undoubtedly an ongoing contractual relationship between Plaintiff and Defendant. The parties have had a business relationship for more than six years,

one which resulted in more than 575 transactions, concerning 1,700 loans between the parties worth in excess of $300 million. (Kaiserman Aff. ¶ 11 & Ex. A.) Defendant's position is that the governing Agreement was simply a buy-sell arrangement whereby "once each loan was sold and the servicing rights conveyed there was no further relationship between the parties in connection with that loan." (Def. Mem. 6 (emphasis added).) This is simply not true, as both the Original and amended Agreement call for Defendant to repurchase loans under certain circumstances.[6] Defendant retained an obligation under each loan and thus was subject to an ongoing contractual relationship.

Second, the Agreement contains a choice-of-law clause that selects New York law as the governing law of the contract. Though not a dispositive factor, it is a significant one because "the parties, by so choosing, invoke the benefits and protections of New York law." Sunward, 362 F.3d at 23. Accordingly, the Court affords significant weight to the existence of the clause in the agreement.

---

[6] Section 3.05 of the Purchase Agreements calls for Defendant to repurchase loans where the underlying borrower defaulted on his or her payment obligations within three months after receiving the loan. (See Agreement 38.)

Third, Defendant is required to send notices and payments to New York pursuant to the Agreement. Section 12.05 of the Agreement, entitled "Notices," requires Cameron to direct all notices and communications to the Plaintiff in New York.[7] Plaintiff also alleges that Defendant has, in fact, made repurchase payments for other loans that are not the subject of this litigation to its New York bank account.[8] Therefore, the Agreement's

---

[7] Section 12.05 of the Agreement states:

> Any demands, notices or other communications permitted or required hereunder shall be in writing and shall be deemed conclusively to have been given if personally delivered at or mailed by registered mail, postage prepaid, and return receipt requested or certified mail, return receipt requested, or transmitted by telex, telegraph or telecopier and confirmed by a similar mailed writing, as follows. . .
>
> (iii) if to the Purchaser:
> DLJ Mortgage Capital, Inc.
> c/o Credit Suisse First Boston LLC
> Eleven Madison Avenue
> 4th Floor
> New York, New York 10010
> Attention: Kari Roberts
>
> with copy to:
> DLJ Mortgage Capital, Inc.
> c/o Credit Suisse First Boston LLC
> One Madison Avenue
> 9th Floor
> New York, New York 10010
> Attention: General Counsel

(Amended Agreement 74-75.)

[8] Defendant initially argued in opposition that it paid in this fashion only because Plaintiff requested that it do

*continued on next page*

provisions on notices and payments weigh in favor of this Court exercising jurisdiction.

The only factor that arguably cuts against the exercise of jurisdiction is Sunward's second factor: whether Defendant negotiated the Agreement in New York or visited the State regarding the relationship. Examining the Complaint and accompanying affidavits, it appears as though there were little to no negotiations over the content of the underlying Agreement. Cameron simply prepared and sent out a "correspondent application" to Credit Suisse First Boston in New York, which included various supporting materials such as Cameron's financial statements and a corporate resume. (Pl. Mem. 3.) Any negotiations that did occur were about loans that would be exchanged pursuant to that underlying agreement.[9]

---

*continued from previous page*
so, not because the contract requires it. (See Reply Mem. 6-7.) Subsequently, Defendant, in a supplemental certification filed on August 10, 2007, denied ever making such payments to or repurchasing any loans from Plaintiff. (Fierro Certif. II ¶ 7.) The Court, however, must resolve this conflict in favor of Plaintiff on a Rule 12(b)(2) motion and therefore accepts as true Plaintiff's allegations that Defendant made such payments.

[9] Plaintiff alleges only that there were "offers by [Defendant] to purchase mortgage loans, details and diligence-related matters concerning such mortgage loans, and the logistics of the purchase/sale transactions." (Pl. Mem. 5.)

Thus to the extent that there were any negotiations over the Agreement, they were minimal. And even if there were more substantial negotiations, the general rule under New York law is that remote negotiations such as these are insufficient to qualify as "transacting business" under CPLR section 302(a). See, e.g., Etra v. Matta, 61 N.Y.2d 455, 474 (1984) (finding telephone and mail contacts "too insubstantial" to amount to transacting business); Kahn Lucas Lancaster, Inc. v. Lark Int'l Ltd., 956 F. Supp. 1131, 1135 (S.D.N.Y. 1997) (declining to exercise jurisdiction over a Hong Kong clothing-supply company, despite its extensive use of telephone, facsimile and mail communications in negotiating with plaintiff).

Nevertheless, where a defendant uses such remote communications to project itself into business transactions in the forum state, the communications may support jurisdiction when considered in the totality of the circumstances. See Treeline, 2007 WL 1933860, at *3.[10]

---

[10] The Court also notes that New York law has moved away from the requirement of having a physical meeting in order to exercise jurisdiction. See, e.g., Fischbarg v. Doucet, 38 A.D.3d 270 (N.Y. App. Div. 1st Dep't 2007) (upholding jurisdiction in a an action for nonpayment of attorney's fee relating to an Oregon case against out-of-state clients who transacted business with the attorney solely by phone, fax, and email); see also Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 171 F.3d 779, 787 (2d Cir. 1999)

*continued on next page*

Accordingly, while here the negotiations alone may not have been sufficient to confer jurisdiction over the Defendant, the Court finds that the other Sunward factors and the totality of the circumstances justify exercising jurisdiction in this case.

3. Constitutional Analysis

Though Defendant does not argue the point, the Court notes that the exercise of personal jurisdiction here also satisfies the requirements of due process. Sunward, 362 F.3d at 24 (noting that the exercise of long arm jurisdiction must satisfy due process standards). Plaintiff has made a prima facie showing that due process is satisfied because (1) Plaintiff's claims arise out of or relate to Defendant's contacts with the forum, see Metropolitan Life Insurance Co. v. Robertson, 84 F.3d 560, 567-68 (2d Cir. 1996), and (2) the exercise of jurisdiction comports with "traditional notions of fair play and justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945).

---

*continued from previous page*
(observing that "lawyers and other professionals today transact business with their pens, their fax machines and their conference calls-not with their feet"). The Court need not resolve the exact contours of this dispute at this time because it finds that the other Sunward factors are sufficient to find that the Defendant has "transacted business" under CPLR section 302(a)(1).

Defendant has directed activities toward New York by: initiating its sales arrangement with the Plaintiff; engaging in an on-going business relationship with a New York company; and remitting payments to New York. The instant litigation arises from these activities. Thus, Defendant should have "reasonably anticipated being haled into court [h]ere." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474 (1985). Defendant's motion to dismiss for lack of jurisdiction is therefore denied.

B. Venue

Defendants move pursuant to FRCP 12(b)(3) to dismiss this action for improper venue or, in the alternative, for a transfer of venue to the Central District of California pursuant to 28 U.S.C. § 1404(a).

1. Dismissal for Improper Venue

Venue in a diversity case is proper in a judicial district in which a substantial part of the events or omissions giving rise to a claim occurred or where a substantial part of the property that is the subject of the action is situated. 28 U.S.C. § 1391(a)(2). In contract disputes, courts look to factors such as "where the contract was negotiated or executed, where it was to be

performed, and where the alleged breach occurred." Gulf Ins. Co. v. Glasbrenner, 417 F.3d 353, 357 (2d Cir. 2005) (quoting PI, Inc. v. Quality Prods., Inc., 907 F. Supp. 752, 757-58 (S.D.N.Y. 1995)). The section 1391(a)(2) standard may be satisfied by as little as a single "communication transmitted to or from the district in which the cause of action was filed, given a sufficient relationship between the communication and the cause of action." Sacody Technologies, Inc. v. Avant, Inc., 862 F. Supp. 1152, 1157 (S.D.N.Y. 1994).

Defendant contends that "none of the alleged events or omissions giving rise to the action occurred in New York." (Def. Mem. 9.) This contention is without support in the record, especially when viewed in the light most favorable to Plaintiff. First, the limited negotiations in this case occurred at least partly in New York because that is where Plaintiff was located. (See Compl. ¶ 3); see also Sea Tow Servs. Int'l, 472 F. Supp. 2d 349, 364 (collecting cases for the proposition that when negotiations occur over the phone and through facsimile, venue is appropriate in either district). Even without such an assumption, Defendant's failure to repurchase the loans is itself sufficient to confer venue. See, e.g., Sea Tow, 472 F. Supp. 2d at 363 (holding that defendant's failure to make payments into New

York bank accounts makes venue proper in New York). Second, as noted above, the Agreement required payments to be mailed to New York. (Agreement 74-75.) Thus, Defendant's partial performance and partial breach make New York an appropriate forum. See Sea Tow, 472 F. Supp. 2d at 364-65 (collecting cases). The Court therefore finds that the Plaintiff has shown that significant material acts and omissions bearing a close nexus to the claims in this case have occurred in New York. See Gulf Ins., 417 F.3d at 357. For this reason, Defendant's motion to dismiss for improper venue is denied.

    2.    Transfer of Venue

Finally, Cameron asks that the Court transfer this action to the Central District of California pursuant to 28 U.S.C. § 1404, which provides that "[f]or the convenience of the parties and witnesses, in the interests of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Under this statute the defendant must make a substantial showing that the action would be better litigated elsewhere. See Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508 (1947) ("Unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.").

Courts balance several factors when deciding whether to transfer, including:

> (1) the convenience of witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of the operative facts; (5) the availability of process to compel attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

Ginsberg v. Gov't Props. Trust, No. 07 Civ. 365, 2007 WL 2981683, at *15 (S.D.N.Y. Oct. 11, 2007); Am. Eagle Outfitters, Inc. v. Tala Bros. Corp., No. 06 Civ. 2072, 2006 WL 2949932, at *477 (S.D.N.Y. Oct. 16, 2006). The only plausible factor that would justify transferring venue is the convenience of a non-party witness, Mr. Gary Shev, who served as an employee of a consultant to Defendant. (Fierro Certif. ¶ 13; Def. Mem. 11.) Defendant proffers that Mr. Shev "will most likely" testify in support of its affirmative defense that "Plaintiff may have failed to properly mitigate its damages." (Fierro Certif. ¶ 13.) Despite the fact that the convenience of witnesses is typically the most important factor in a motion pursuant to § 1404(a), see A Slice of Pie Productions, LLC v. Wayans Brothers Entertainment, 392 F. Supp. 2d 297, 308 (D. Conn.

2005), the Defendant has not met its burden of showing that the balance tips strongly in its favor. First, Defendant puts forward no evidence that Mr. Shev is either unwilling or unable to travel to New York to testify at trial. Second, as Defendant admits in its submissions, whether the affirmative defense of failure to mitigate will be advanced at trial is still a matter of speculation at this point. The Court is reluctant to base a transfer upon the proffer of a single witness who has not objected to testifying in New York and whose testimony may be invoked solely at Defendant's option. To do so would be to ignore the weight accorded to Plaintiff's choice of forum. As Defendant has offered no other basis for a claim that its witnesses will be significantly inconvenienced, the Court finds that this factor is neutral, at best, when deciding the motion to transfer.

The remaining considerations also favor maintaining venue in New York. This case is likely to turn on documentary evidence, especially electronic files that are located in both California and New York. And as Judge Haight has observed, "[t]he location of relevant documents is largely a neutral factor in today's world of faxing, scanning, and emailing documents." Am. Steamship Owners Mut. Protection and Indem. Ass'n, Inc. v. LaFarge North

Am., Inc., 474 F. Supp. 2d 474, 484 (S.D.N.Y. 2007). Accordingly, in light of the deference given to Plaintiff's choice of forum, the motion to transfer venue is denied.

CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss pursuant to Rules 12(b)(2) and 12(b)(3), or in the alternative to transfer pursuant to 28 U.S.C. § 1404(a) [dkt. no. 8], is denied in its entirety. Counsel shall confer and inform the Court by letter no later than December 14 how they propose to proceed.

SO ORDERED:

Dated: December 4, 2007
New York, New York

Loretta A. Preska

LORETTA A. PRESKA, U.S.D.J.